1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8               FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10  BARBARA DIANE WARD,              )
    a.k.a. DIANE WARD,               )
11                                   )        No. CIV-S-04-0448 GEB (GGH)
                    Plaintiff,       )
12                                   )
            v.                       )
13                                   )
    SUTTER UNION HIGH SCHOOL         )        ORDER*
14  DISTRICT, RYAN ROBISON,          )
    individually and in His          )
15  Official Capacity; LORI          )
    TEXEIRA, Individually and        )
16  in Her Official Capacity;        )
    and SUTTER COUNTY, DAVID         )
17  McFARLAND, Individually and      )
    in His Official Capacity,**      )
18                                   )
                    Defendants.      )
19  ─────────────────────────────────)

20          Pending is Defendant David McFarland (a deputy sheriff) and

21  Defendant Sutter County's (McFarland's employer) joint motion for

22  summary judgment on Plaintiff's federal and state claims.  The essence

23  of Plaintiff's lawsuit alleges these Defendants wrongfully

24  ────────────

25      *    This matter was determined to be suitable for decision
    without oral argument.  L.R. 78-230(h).

26      **   The caption is amended to reflect the dismissal of John
27  Doe, who is dismissed because Plaintiff failed to file an Amended
    Complaint identifying John Doe within 60 days of the Status
    (Pretrial Scheduling) Order filed June 21, 2004.  (See Status
28  Order at 2.)

investigated, arrested, and imprisoned her for thievery crimes suspected of having occurred at Sutter Union High School.  Ryan Robison (Plaintiff's supervisor who is employed as a Principal/Superintendent), Lori Texeira (Plaintiff's co-worker), and Sutter Union High School District (Plaintiff's employer) separately filed motions for summary judgment in this action, but these Defendants "authorized a request that their pending motions for summary judgment be removed from this Court's calendar" because "Plaintiff has reached a settlement with [them]."  (Pl.'s Not. of Settlement at 1-2.)  In light of these parties' settlement, these Defendants' motions are deemed withdrawn.

**Discussion**[1]

I.   ***Federal Claims***

      A.   <u>McFarland</u>

Plaintiff claims that McFarland violated her Fourth Amendment right to be free from unreasonable searches when McFarland installed a covert video camera to surveil a student body fund deposit pouch. (Pl.'s Opp'n to Defs. Sutter County and McFarland's Mot. for Summ. J. ("Pl.'s Opp'n") at xxxix-xl.)  McFarland installed the challenged surveillance video camera to aid him in his investigation of the possible misappropriation of money from the student body fund deposit pouch.  This pouch was kept in the third drawer of a file cabinet, located in a storage room adjacent to the administrative office where Plaintiff, Texeira, Robison, and Pat Hill (another

---

[1] "The standards applicable to motions for summary judgment are well known, <u>see, e.g.,</u> <u>Rodgers v. County of Yolo</u>, 889 F. Supp. 1284 (E.D. Cal. 1995), and need not be repeated here." <u>Reitter v. City of Sacramento</u>, 87 F. Supp. 2d 1040, 1042 (E.D. Cal. 2000).

1  District employee) worked.  (<u>Id.</u> ¶ 6.)  That file cabinet was
2  accessible to each of these individuals, and teachers regularly
3  accessed the storage room because it housed other cabinets containing
4  materials the teachers needed. (Robison Decl. ¶¶ 15-16; Robison Depo.
5  at 108:6-20; Texeira Depo. at 163:3-18; 167:17-20; 186:3-21; Ward
6  Depo. at 42:9-21.)  The door to the storage room remained open during
7  business hours.  (Ward Depo. at 41:26-42:8.)

8          Plaintiff also claims that McFarland violated her right to
9  privacy under the Fourteenth Amendment when he obtained information
10  from school officials related to her wages.  (<u>Id.</u> at xl.)
11  Furthermore, Plaintiff alleges that McFarland violated her Fourth
12  Amendment right to be free from unreasonable seizures when he arrested
13  her for embezzlement, grand larceny, and burglary.  (<u>Id.</u> at xxxiv-
14  xxxvii.)  Finally, Plaintiff alleges that McFarland violated her right
15  to equal protection by maliciously prosecuting her.  (2d Am. Compl.
16  ¶¶ 34-39.)

17          1.   **Invasion of Privacy**

18               a.   *Surveillance Video*

19          Whether Plaintiff has an actionable privacy interest which
20  was violated by McFarland's use of the video surveillance is analyzed
21  under the Fourth Amendment's reasonable expectation of privacy
22  standard.  <u>Armendariz v. Penman</u>, 75 F.3d 1311, 1319 (9th Cir. 1996)
23  (indicating that when the Fourth Amendment provides explicit
24  limitations on the type of government conduct challenged by plaintiff,
25  that Amendment should guide the analysis of plaintiff's claim).  "A
26  Fourth Amendment search occurs when the government violates a
27  subjective expectation of privacy that society recognizes as
28  reasonable."  <u>Kyllo v. United States</u>, 533 U.S. 27, 33, (2001).

1    "[T]he Fourth Amendment forbids warrantless videotaping of a
2    private office." United States v. Gonzalez, 328 F.3d 543, 548 (9th
3    Cir. 2003).  But Plaintiff had no private work space in the storage
4    room since neither the surveilled storage room nor the file cabinet
5    holding the student body fund deposit pouch was under the exclusive
6    control of Plaintiff.  (Robison Decl. ¶ 16); Gonzalez, 328 F.3d at
7    548.  Even though Plaintiff contends that she subjectively believed
8    what occurred in the storage room was private, Plaintiff's subjective
9    belief was not objectively reasonable given the open nature of the
10   storage room to other school officials.[2] Kyllo, 533 U.S. at 33;
11   O'Connor, 480 U.S. at 717-18 (plurality opinion).  Therefore,
12   McFarland's videotaping of activity in the storage room did not invade
13   Plaintiff's reasonable expectation of privacy under the Fourth
14   Amendment.

15          b.   *Personal Information*

16          McFarland also seeks summary judgment on Plaintiff's
17   Fourteenth Amendment claim that he violated her right to informational
18   privacy by obtaining from Robison information about her salary and
19   wage garnishments.[3]  (Pl.'s Opp'n at xxxix-xl.)  One of the elements
20   Plaintiff must establish to prevail on this claim is that McFarland

21   _____

22          [2]____Plaintiff argues that she had a reasonable expectation
     of privacy in the storage room because she used the storage room
23   to adjust clothing, including undergarments, and students used
     the storage room to administer insulin injections.  (Texeira
24   Depo. at 167:20-23; Ward Depo. at 42:9-21.)  However, these
     activities did not convert this area into a place where
25   Plaintiff's subjective expectation of privacy is recognized as
     reasonable.  See O'Connor v. Ortega, 480 U.S. 709, 716 (1987)
26   (plurality opinion).

27          [3]     Robison did not disclose Plaintiff's precise salary;
28   rather, he indicated that Plaintiff's salary was the lowest on
     the staff.  (McFarland Decl. ¶ 5.)

4

obtained constitutionally protected information.  <u>See</u> <u>Crawford v.</u>
<u>United States Trustee</u>, 194 F.3d 954, 958 (9th Cir. 1999) (indicating
that informational privacy concerns unique information that is not
generally made public).  But Plaintiff has not shown that she has
recognized privacy interests in the information McFarland obtained.
General salary ranges for California public employees are available
for public review, and wage garnishments are the result of a public
procedure.  Cal. Gov't Code § 6253(a); <u>see</u> <u>generally</u> Cal. Civ. Proc.
Code § 706.026(b).  Thus, McFarland is granted summary judgment on
this claim.

    2.   **False Arrest**

    McFarland seeks summary judgment on Plaintiff's false arrest
claim, contending he had probable cause to arrest Plaintiff for
embezzlement,[4] grand theft,[5] and burglary.[6]  Arrests without probable
cause give rise to liability under 42 U.S.C. § 1983.  <u>McKenzie v.</u>
<u>Lamb</u>, 738 F.2d 1005, 1007 (9th Cir. 1984) (citing <u>Gilker v. Baker</u>, 576
F.2d 245 (9th Cir. 1978)).  Probable cause exists when, "under the
totality of the circumstances known to the arresting officers, a
prudent person would have concluded that there was a fair probability
that [the] suspect had committed a crime." <u>Peng v. Hu</u>, 335 F.3d 970,

---

   [4]   Embezzlement is the fraudulent appropriation of
property by a person to whom it is entrusted.  Cal. Penal Code
§ 503.

   [5]   Grand theft is committed where money is taken by an
employee from his or her employer that aggregates four hundred
dollars ($400) or more in any twelve consecutive month period.
Cal. Penal Code § 487(b)(3).

   [6]   Every person who enters any room or other building with
intent to commit grand or petit larceny or any felony is guilty
of burglary.  Cal. Penal Code § 459.

1  976 (9th Cir. 2003) (citation omitted); see Maryland v. Pringle, 540

2  U.S. 366, 371 (2003) (holding that probable cause is determined based

3  on the facts available to the officer at the time of the arrest).

4      McFarland points to the information he had, which he

5  contends supports his position that he had probable cause to arrest

6  Plaintiff.  Video surveillance of the file cabinet holding the

7  investigated student body fund deposit pouch was conducted from May 18

8  to May 28, 2003.  (McFarland Decl. ¶¶ 9, 18.)  On May 29, 2003,

9  McFarland and another detective interviewed Hill, Texeira, and

10  Plaintiff (sequentially) in Robison's office regarding the money

11  missing from the student body fund deposit pouch.  (McFarland Decl. ¶¶

12  21, 22, 23; Zembiec Decl. ¶ 10.)  McFarland formally arrested

13  Plaintiff at the conclusion of her interview.  (McFarland Decl. ¶ 25.)

14      At the time McFarland arrested Plaintiff, McFarland had

15  gathered the following information:[7]

16

17

18

---

19      [7]  Plaintiff argues that there are genuine issues of

20  material fact as to the facts listed below because (1)
    McFarland's expert testified that McFarland did not have direct

21  or circumstantial evidence to support probable cause (Zwickey
    Depo. at 101:7-24), (2) McFarland's police report is silent on

22  whether Plaintiff placed money into the student body fund deposit
    pouch (Mancl Decl. ¶ 25, Exh. 24), (3) there is an alternative

23  post hoc explanation for what happened to the money missing from
    the student body fund deposit pouch (McFarland Depo. at 185:9-

24  20), and (4) the Sutter County Sheriff testified that he could
    not form an opinion as to probable caused based on a review of a

25  portion of the information presented to McFarland (Denney Depo.
    at 99:14-100:19).  Plaintiff's first argument fails because she

26  mischaracterizes Zwickey's deposition testimony.  Plaintiff's
    remaining arguments fail to create a genuine issue of material

27  fact as to whether McFarland reasonably concluded that he had

28  probable cause to arrest Plaintiff based on the circumstances of
    which he was aware at the time of the arrest.

(1)   Robison reported $10,000 and Texeira reported that as much as $20,000 had been stolen from the student body funds during the school year (McFarland Decl. ¶ 40(a));[8]

(2)   The surveillance camera captured Plaintiff taking money out of the student body fund deposit pouch kept in the third drawer of the file cabinet in the storage room on May 19 and May 20, 2003, and Plaintiff was not observed putting money back inside the pouch on either day (Id. ¶¶ 11, 13, 19, 40(c),(h); McFarland Depo. at 363:18-365:2, 365:22-366:7, 369:22-372:5, 374:23-375:7);[9]

(3)   Plaintiff was the only person seen on the videotape taking money out of the student body fund deposit pouch kept in the surveilled drawer without putting money into the pouch (McFarland Decl. ¶ 40(i); Zembiec Decl. ¶ 9; McFarland Depo. at 358:10-359:12; 380:6-381:20); and

(4)   There was money missing from the student body fund deposit pouch on May 19 and May 20, 2003 - the days that Plaintiff was seen taking funds out of the pouch without placing money back into the pouch (McFarland Decl. ¶¶ 10-13, 40(d),(h)).[10]

---

[8]    While Plaintiff disputes the accuracy of Texeira's $20,000 figure, it is undisputed that Texeira told McFarland that approximately $20,000 was stolen from the investigated student body funds.

[9]    Plaintiff argues that this fact is disputed because McFarland didn't know what happened to the money she took from the student body fund deposit pouch after she left the storage room.  This argument, however, does not controvert McFarland's declaration that he observed Plaintiff remove money from the student body fund deposit pouch, but did not observe her returning money to the pouch.

[10]   Plaintiff declares that she never stole money from the District or the student body fund deposit pouch.  (Ward Decl. ¶¶ 1-2.)  But this declaration does not undermine the circumstances

(continued...)

7

1    Based upon "the totality of the circumstances known to

2  [McFarland], a prudent person could have concluded that there was a

3  fair probability that [Plaintiff] had committed [embezzlement, grand

4  theft, and burglary]."  Peng, 335 F.3d at 976 (citation omitted).

5  Since McFarland had probable cause to arrest Plaintiff, his summary

6  judgment motion is granted on this claim.[11]

7          3.  **False Imprisonment**

8    McFarland asserts that Plaintiff's false imprisonment claim

9  is based exclusively on her arrest.  (McFarland's Sep. Stmt. ¶ 52.)

10 This has not been controverted by Plaintiff.  (Pl.'s Resp. to

11 McFarland's Sep. Stmt. ¶ 52.)  Therefore, summary judgment is entered

12 on Plaintiff's false imprisonment claim.

13          4.  **Malicious Prosecution**

14   McFarland also seeks summary judgment on Plaintiff's

15 malicious prosecution claim.  One of the elements Plaintiff must show

16 to prevail on this claim is that a criminal prosecution was initiated

17 against her.  Usher v. City of Los Angeles, 828 F.2d 556, 562 (9th

18

19      [10](...continued)

20 on which McFarland based his probable cause to arrest Plaintiff.
   Plaintiff also argues that McFarland (1) did not consider other

21 suspects, (2) failed to conduct a thorough investigation, and (3)
   was unaware of facts implicating Texeira.  (Pl.'s Opp'n at xxx.)

22 These arguments do not negate the probable cause McFarland had to
   arrest Plaintiff.  Further, Plaintiff asserts that McFarland now

23 concedes that he did not have probable cause at the time of the
   arrest (Pl.'s Opp'n Sep. Stmt. ¶ 205), but this assertion

24 mischaracterizes McFarland's deposition testimony and McFarland's
   objection to this mischaracterization is sustained.

25

26      [11]    Plaintiff also argues that her constitutional rights
   were violated because McFarland did not inform Plaintiff of her

27 *Miranda* rights when he interviewed her in Robison's office.  This
   argument fails because it is not based on an actionable claim

28 under § 1983.  Chavez v. Martinez, 538 U.S. 760, 771-772, 789-790
   (2003).

1  Cir. 1987) (citing <u>Singleton v. Perry</u>, 45 Cal. 2d 489, 494 (1955)).

2  McFarland submits uncontroverted evidence that no criminal charges

3  were filed against Plaintiff.  (Schroeder Decl. ¶ 2; Exh. A.)

4  Therefore, McFarland is granted summary judgment on this claim.

5          B.   <u>Sutter County</u>

6          Since McFarland has prevailed on Plaintiff's federal claims,

7  Plaintiff's federal claims against Sutter County "[are] moot because

8  [Plaintiff] suffered no constitutional deprivations."  <u>Saman v.</u>

9  <u>Robins</u>, 173 F.3d 1150, 1157 (9th Cir. 1999).  Therefore, summary

10 judgment on Plaintiff's federal claims is entered in favor of Sutter

11 County.

12 II.  ***Remaining State Law Claims***

13         Since all of Plaintiff's federal claims have been decided,

14 it is determined whether supplemental jurisdiction should continue

15 being exercised over Plaintiff's state law claims.  28 U.S.C.

16 § 1367(c)(3).  Plaintiff's remaining state claims against McFarland

17 and Sutter County are for defamation, intentional infliction of

18 emotional distress, and negligence.[12]  (2d Am. Compl. ¶¶ 40-57.)

19         Exercise of supplemental jurisdiction is discretionary.

20 <u>Mendoza v. Zirkel Fruit Co.</u>, 301 F.3d 1163, 1174 (9th Cir. 2002).

21 "[W]hen deciding whether to exercise supplemental jurisdiction, a

22 federal court should consider and weigh in each case, and at every

23 stage of litigation, the values of judicial economy, convenience,

24

25         [12]   Further, the recent settlement reached by Plaintiff,
   Robison, Texeira, and the District gives rise to a state
26 contract.  <u>See</u> <u>Jessup v. Luther</u>, 277 F.3d 926, 929 (7th Cir.
   2002) (citing <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S.
27 375, 378-382 (1994), and stating that "[a] settlement is just
   another contract to be enforced in the usual way, that is, by a
28 fresh suit.").

1  fairness, and comity." <u>City of Chicago v. Int'l Coll. of Surgeons</u>,

2  522 U.S. 156, 173 (1997) (internal citations omitted).

3              [I]n the usual case in which all federal-law
             claims are eliminated before trial, the
4            balance of factors to be considered under the
             pendent jurisdiction doctrine . . . will
5            point toward declining to exercise
             jurisdiction over the remaining state-law
6            claims.

7  <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988);

8  <u>see</u> <u>Bryant v. Adventist Health Sys./West</u>, 289 F.3d 1162, 1169

9  (9th Cir. 2002) (applying <u>Carnegie-Mellon</u> to supplemental

10 jurisdiction).

11         Since all federal claims have been resolved, this Court

12 declines to continue exercising supplemental jurisdiction over

13 Plaintiff's state law claims "as a matter of comity and to . . .

14 procur[e] for [the parties] a surer-footed reading of applicable

15 [California] law." <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S.

16 715, 726 (1966).  Accordingly, Plaintiff's remaining state law

17 claims are dismissed as of the date on which this order is filed.

18

19         IT IS SO ORDERED.

20 Dated:  July 7, 2005

21
                              <u>/s/ Garland E. Burrell, Jr.</u>
22                            GARLAND E. BURRELL, JR.
                              United States District Judge
23

24

25

26

27

28